IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT ROLLERSON,<br><br>                     Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL<br>Acting Commissioner of the Social Security<br>Administration,<br><br>                     Defendant. | CIVIL ACTION<br>NO. 17-2377 |

## OPINION

**Slomsky, J.**                                                                                    **January 9, 2019**

## I.      INTRODUCTION

Before the Court are the Objections of Plaintiff Robert Rollerson ("Plaintiff") to the Report

and Recommendation ("R&R") of United States Magistrate Judge Marilyn Heffley.  (Doc. No.

15.)  On May 24, 2017, Plaintiff initiated this action by filing a Motion for Leave to Proceed in

Forma Pauperis.  (Doc. No. 1.)  On August 24, 2017, Plaintiff filed a Complaint against Defendant

Nancy A. Berryhill ("Defendant"), Acting Commissioner of the Social Security Administration,

alleging that Defendant wrongfully denied him disability insurance benefits ("DIB") under Title II

of the Social Security Act.  (Doc. No. 3.)   On January 8, 2018, the Court referred the case to

Magistrate Judge Heffley for an R&R.  (Doc. No. 13.)  On June 29, 2018, Magistrate Judge Heffley

issued the R&R, recommending that Plaintiff's request for review be denied (Doc. No. 14), and

on July 13, 2018, Plaintiff timely filed Objections.  (Doc. No. 15.)  Finally, on July 23, 2018,

Defendant filed a Response to Plaintiff's Objections.  (Doc. No. 17.)

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the portions of the R&R to which Objections have been made. After an independent review of the record and for reasons that follow, the Court will overrule Plaintiff's Objections and adopt the R&R in its entirety.

## II.   BACKGROUND

### A.  Factual and Procedural Background

Plaintiff Robert Rollerson was born on February 11, 1960 and has an eleventh grade education. (Administrative Record ("R.") at 185, 190.) Plaintiff claims that beginning September 1, 2008, when he was 48 years old, he began suffering from lower back pain, knee pain, asthma, chronic obstructive pulmonary disease ("COPD")[1], heart issues, and anxiety. (R. at 189.) He also claims that he has a cognitive impairment. (R. at 195.) As a result, on August 21, 2013, Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (R. at 105-6.) Before the onset of his disability, Plaintiff worked as a janitor. (R. at 190.)

Plaintiff's claim was denied on April 3, 2014, and he thereafter filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 20.) On January 27, 2016, ALJ Regina L. Warren held a hearing and heard testimony from Plaintiff, who was represented by counsel. (R. at 20.) The ALJ also heard testimony from Steve H. Gumerman, an impartial vocational expert. (R. at 20.)

On March 10, 2016, the ALJ issued a decision granting Plaintiff's SSI claim, but denying his DIB claim. (R. at 32.) At the time of this decision, Plaintiff was 55 years old and fell into the "advanced age" category of the medical-vocational guidelines, discussed infra. Plaintiff appealed

---

[1]   "Chronic obstructive pulmonary disease (COPD) is a lung disease characterized by chronic obstruction of lung airflow that interferes with normal breathing and is not fully reversible." WORLD HEALTH ORGANIZATION, https://www.who.int/respiratory/copd/definition/en/(last visited Jan. 4, 2019).

the ALJ's findings with respect to the DIB claim.  On April 18, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final determination of the Social Security Commissioner.  (R. at 1.)

**B.  Relevant Social Security Administration Regulations**

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).  The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work.  Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).  If he does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, he is able to perform specific jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4)(i)–(v).

At the third step, the Social Security Administration determines whether the claimant's medical impairment meets or equals one of the medical impairment listings in Appendix 1 of 20 C.F.R. Part 404, Subpart P. § 404.1520(a)(4)(iii). Between the third and fourth steps of the five-step evaluation, the Social Security Administration assesses a claimant's residual functional capacity ("RFC"), which is the "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The Administration uses the RFC assessment to determine at the fourth step whether the claimant is able to do her "past relevant work." 20 C.F.R. § 404.1545(a)(5)(i)

When determining RFC, the Administration considers "all the relevant evidence in [a claimant's] case record . . . including [a claimant's] medically determinable impairments that are not 'severe.'" § 404.1545(a)(1-2). According to the regulations, the Administration "will consider whether [a claimant's] statements and the statements from third parties are consistent with the medical and other evidence . . . ." 20 C.F.R. Part 404, Subpart P, App. 1 § 12(C)(3).

At step five, the Administration considers its assessment of a claimant's residual functional capacity and [his] age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). If a claimant has physical limitations, the Administration will look to the medical vocational guidelines to determine whether a claimant is disabled. These guidelines consider education, skill level, and age. 20 C.F.R. Part 404, Subpart P, App. 2 § 200.00 et seq.

The Social Security Administration recognizes that learning a new skill or transitioning to a new workplace is more difficult for older claimants. Learning a new skill or transitioning to a new workplace is called a "vocational adjustment." Id. § 201.00(c). To account for the difficultly an older claimant may have in making a vocational adjustment, the medical vocational guidelines make it easier for older claimants to prove a disability. Consequently, the guidelines distinguish claimants based on age. The term "younger individual" is used to denote an individual age eighteen (18) through forty-nine (49). Id. § 201.00(h)(1). The term "approaching advanced age" is used to describe an individual age fifty (50) through fifty-four (54). Id. § 201.00(g). A claimant age fifty-five (55) or over falls into the "advanced age" category. Id. § 201.00(f).

A claimant must be insured under the Social Security Act in order to receive DIB. 42 U.S.C. § 216(i). To determine whether a claimant is insured, the Administration considers the "quarters of coverage" the claimant earned. § 216(i)(3). A claimant earns a quarter of coverage by completing work covered under the Social Security Act. Id. Thus, in order to receive DIB for a particular period of time, the claimant must show that (1) he was disabled during that period of time, and (2) he was insured during that period of time.

**C. The ALJ's Findings**

In a decision issued on March 10, 2016, the ALJ applied the Social Security Administration's five-step evaluation and made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since the onset date. (20 CFR 404.1571 et seq., and 416.971 et seq.)

3. Since the alleged onset date of disability, September 1, 2008, the claimant has had the following severe impairments: asthma, chronic obstructive pulmonary disease (COPD), mood disorder, anxiety disorder, sciatica, and peripheral artery disease (20 CFR 404.1520(c) and 416(920(c)).

4. Since the alleged onset date of the disability, September 1, 2008, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that since September 1, 2008, the claimant has the residual functioning capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he should avoid extreme temperatures of cold and heat, fumes, odors, dusts, gases, poor ventilation, hazards, machinery, and heights. The claimant is capable of functioning in production-oriented jobs that require little independent decisionmaking and minimal social interaction. The claimant could perform jobs that do not require complicated tasks. He also requires a low stress work environment with no continuous interaction with the public. He can be around coworkers and supervisors in proximity but would work best on independent assignments that require minimal social contact to complete. Few workplace changes, if any are necessary, should be gradually introduced. All postural activities should be performed on an occasional basis except no ladders.

6. Since September 1, 2008, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Prior to the established disability onset date, the claimant was a younger individual aged 45-49. He subsequently changed age categories again to an individual closely approaching advanced age. On July 11, 2015, the claimant's age category changed for a third time to an individual of advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Prior to July 11, 2015, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. Beginning of July 11, 2015, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functioning capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. The claimant was not disabled prior to July 11, 2015, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13. The claimant was not under a disability within the meaning of the Social Security Act at any time through September 30, 2013, the date last insured (20 CFR 404.315(a) and 404.320(b)).

14. The claimant's substance use disorders are not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

(R. at 22-32.) In short, the ALJ found that Plaintiff became disabled when he turned fifty-five years old on July 11, 2015 and moved into the "advanced age" category of medical-vocational guidelines. As a result, she granted his SSI claim. However, because the ALJ found that Plaintiff was not disabled until he moved into the advanced age category, he was not disabled between September 1, 2009 and September 30, 2013—the period during which he was insured under the Social Security Act. Consequently, the ALJ found that he was ineligible to receive DIB. (R. at 32.)

## III.   STANDARD OF REVIEW

When reviewing a final decision of the Commissioner of Social Security, a court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla ... [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 Fed.Appx. 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as her findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see also 42 U.S.C. § 405(b)(1). An ALJ must consider, evaluate, and refer to specific

medical evidence in the record in his decision.  See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003).  Based on this evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as her finding of fact.  Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless the ALJ's finding is not supported by substantial evidence.  Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

## IV.    ANALYSIS

Plaintiff makes four Objections to Magistrate Judge Heffley's Report and Recommendation.  (Doc. No. 15.)   First, Plaintiff objects to the Magistrate Judge's finding that the ALJ properly addressed his alleged cognitive impairment.   (Id. at 1.)   Second, Plaintiff challenges the Magistrate Judge's finding that the ALJ reasonably explained her assessment of Plaintiff's residual functioning capacity.  (Id. at 3.)  Third, Plaintiff argues that the Magistrate Judge erred by finding that the ALJ reasonably explained her decision to reject certain medical opinion evidence.   (Id. at 5.)   Finally, Plaintiff claims that the Magistrate Judge erred by finding that substantial evidence supports the ALJ's determination that Plaintiff's testimony was not credible. (Id. at 7.)  The Court will address each Objection seriatim.

### A.  The Magistrate Judge did not Err by Finding that the ALJ Properly Addressed Plaintiff's Cognitive Impairment

Plaintiff first argues that the Magistrate Judge erred by finding that the ALJ adequately explained her decision that Plaintiff's alleged cognitive limitation is not a severe impairment.  (Id. at 1.)  Additionally, Plaintiff objects to the Magistrate Judge's finding that any error with respect to Plaintiff's alleged cognitive limitation was harmless because it did not prevent the ALJ from proceeding to steps three through five of the Social Security Administration's five-part evaluation. (Id.)  For the reasons discussed below, the Court is not convinced by Plaintiff's arguments.

The second step of the Social Security Administration's five-step evaluation directs an ALJ to consider the medical severity of a claimant's alleged impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If an ALJ finds that an alleged impairment is not severe, the claimant is not considered disabled. Id. A severe impairment is defined as "any impairment or combination of impairments that limits [a claimant's] physical or mental ability to do basic work activities." Id. § 404.1520(c).

Here, Plaintiff alleged several impairments, including a severe cognitive limitation. At step two, the ALJ found that Plaintiff only suffered from the following severe impairments: "asthma, chronic obstructive pulmonary disorder (COPD), mood disorder, anxiety disorder, sciatica, and peripheral artery disease." (R. at 23.) The ALJ found that Plaintiff's alleged cognitive limitation was not a severe impairment. She explained her decision as follows:

> The claimant also alleged he is unable to work due to a cognitive impairment. Although he reportedly dropped out of ninth grade, he did not participate in special education. In addition, even though the claimant reportedly cannot read, he remains capable of performing most activities of daily living independently, including doing simple math, shopping, and using public transportation. Although the consultative examiner reported that the claimant has "intellectual limitation," he relied solely on the claimant's subjective allegations. Notably, the examiner failed to administer any cognitive functioning tests to assess properly the claimant's intellectual functioning. Thus, the claimant's reported "cognitive impairment" does not represent a medically determinable impairment, as there is no definitive diagnosis from an acceptable medical source.

(R. at 24) (internal citations omitted).

Plaintiff argues that the ALJ did not reasonably explain her finding that Plaintiff does not have a severe cognitive impairment. He contends that "[t]he record contains considerable evidence that Plaintiff has a significant cognitive impairment." As an initial matter, the Court disagrees that the ALJ did not explain her reasoning for this finding. She clearly states that Plaintiff's alleged cognitive impairment is not a severe impairment because he was never diagnosed by an

"acceptable medical source." (R. at 24.) Additionally, she cites to the fact that Plaintiff never participated in special education and can still perform activities such as simple math, shopping, and using transportation. (R. at 24.) Finally, the ALJ explained that the record is devoid of any evidence to support Plaintiff's claim except the report of a single examiner who relied only on Plaintiff's "subjective allegations" and no objective medical evidence. Without more, the ALJ refused to find that Plaintiff's alleged cognitive limitation is severe. This explanation is sufficient.

Furthermore, the Court is unpersuaded by Plaintiff's argument that other evidence in the record supports a finding that his cognitive limitation is severe. For one, Plaintiff does not cite to any specific evidence that could support his argument. Additionally, Plaintiff's contention ignores the relevant standard of review. When reviewing a final decision of the Commissioner of Social Security, a court must only determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla…[and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 Fed. App'x. 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). As noted above, substantial evidence supports the ALJ's finding. The remote possibility that the ALJ could have interpreted the facts differently or relied on other evidence does not mean that her finding lacks substantial support.

Additionally, Plaintiff seems to object to the Magistrate Judge's finding that any error regarding his alleged cognitive limitation was harmless. (Doc. No. 15 at 1.) In general, if an ALJ finds that a claimant does not suffer from a severe impairment, the analysis stops at step two and the claimant's claim is denied. But where an ALJ finds at least one severe impairment at step two, the inquiry continues. In that case, even though the ALJ found one or more impairments non-

severe, they are still considered at later steps. "When an ALJ makes an RFC determination, [at step four] he must consider the combined effect of all the plaintiff's impairments, whether those impairments are severe or not-severe." Williams v. Comm'r of Soc. Sec., No. 12-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013) (citing 20 C.F.R. § 404.1545).

Taking this into consideration, the Magistrate Judge found that even if the ALJ's finding at step two was erroneous, the error was harmless "so long as the sequential evaluation process continues beyond that step, and the functional limitations associated with the impairment are accounted for in the RFC at step four." (Doc. No. 14 at 7.) In relevant part, the Magistrate Judge explained as follows:

> Here, although the ALJ found at step two that that [sic] Rollerson had failed to present sufficient medical evidence to establish that his cognitive limitation represented a medically determinable impairment, she continued through the remaining steps in the analysis because she found he suffered from other severe impairments. See R. at 23. In formulating Rollerson's RFC, the ALJ specifically discussed the opinions of his treating physicians regarding his cognitive abilities, id. at 28, and incorporated restrictions in his RFC to address his intellectual limitations, see id. at 26, 30 (stating that the RFC contained provisions to address Rollerson's "moderate mental limitations"). Accordingly, if the ALJ erred in not finding Rollerson's asserted cognitive deficiencies to be a severe impairment at step two, that error had no effect on the outcome of his claim.

(Id.)

Plaintiff objects to this analysis. He argues that the fact that the ALJ proceeded through the five-step analysis "does not show harmless error because Plaintiff's cognitive impairment is not merely pertinent at step two. It is pertinent to the step three determination, the RFC assessment in general, and to the weighing of opinion evidence and Plaintiff's testimony." (Doc. No. 15 at 1.) But this argument appears to misunderstand the Magistrate Judge's reasoning. Plaintiff simultaneously argues that his cognitive impairment is relevant at later steps, and ignores the fact

that both the ALJ and the Magistrate Judge did indeed consider his cognitive impairment at later steps. As a result, his argument lacks merit.

For these reasons, the Court is not persuaded by Plaintiff's arguments and will overrule Plaintiff's first Objection.

**B. The Magistrate Judge did not Err by Finding That the ALJ Reasonably Explained Her Assessment of Plaintiff's Residual Functioning Capacity**

Second, Plaintiff contends that the Magistrate Judge erred by finding that the ALJ adequately explained her assessment of Plaintiff's residual functioning capacity ("RFC"). (Doc. No. 15 at 3.) Specifically, Plaintiff argues that the ALJ did not properly explain the RFC assessment as it pertained to Plaintiff's breathing issues and back problems. (Id. at 3-4.) These arguments, however, are unconvincing.

As explained above, the Social Security Administration must assess a claimant's RFC between the third and fourth steps of the five-step evaluation. A claimant's RFC refers to the most activity he can perform despite his limitations. § 404.1545(a)(1). The Administration uses the RFC assessment to determine at the fourth step whether the claimant can perform his "past relevant work." § 404.1545(a)(5)(i)

Here, after reviewing the record and hearing testimony, the ALJ determined that Plaintiff "has the residual functioning capacity to perform light work . . . ." (R. at 26.) Additionally, she found the following:

> The claimant is capable of functioning in production-oriented jobs that require little independent decisionmaking and minimal social interaction. The claimant could perform jobs that do not require complicated tasks. He also requires a low stress work environment with no continuous interaction with the public. He can be around coworkers and supervisors in proximity but would work best on independent assignments that require minimal social contact to complete. Few workplace changes, if any are necessary, should be gradually introduced. All postural activities should be performed on an occasional basis except no ladders.

(R. at 26.)

In making this assessment, the ALJ evaluated Plaintiff's alleged symptoms and considered whether the intensity, persistence, and limiting effects of his symptoms hindered his ability to perform basic work activities. (R. at 26.) Relevant here is the ALJ's discussion of Plaintiff's breathing issues and back problems. With respect to Plaintiff's breathing problems, the ALJ wrote the following:

> Turning to the medical record, the claimant has a history of shortness of breath. Treatment included inhalers, which helped alleviate shortness of breath symptoms. In fact, physical examinations generally indicated benign findings including symmetrical chest expansion and respiratory effort, normal breath sounds, and no wheezes or rales. Doctors advised the claimant to stop smoking, alcohol, and cocaine because these substances exacerbated asthmatic symptoms. The claimant however, continued to use these substances against medical advice.

(R. at 27.) The Magistrate Judge found that the ALJ adequately explained this decision and that the decision is supported by substantial evidence. (Doc. No. 14 at 14-16.)

Plaintiff disagrees, and still contends that the ALJ failed to adequately explain the RFC assessment as it pertains to his breathing problems. Further, he argues that the evidence in the record weighs against a finding that his breathing problems were "benign." (Doc. No. 15 at 3.)

As noted in the R&R, an ALJ is required to provide a "clear and satisfactory explanation of the basis on which [he or she] rests" a decision. Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981). The reason for this requirement is clear: a reviewing court must be able to determine the basis for the ALJ's decision. Teeters v. Colvin, No. 14-252, 2015 WL 1811264, at *2 (W.D. Pa. Apr. 21, 2015). An ALJ's decision is sufficient if it enables a district court to conduct a "meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Where a court finds that substantial evidence supports an ALJ's decision, the decision is sufficiently supported by a

clear and satisfactory explanation.  See Hernandez v. Comm'r of Soc. Sec., 89 Fed. App'x. 771, 774 (3d Cir. 2004).

Having independently reviewed the record, the Court agrees with the Magistrate Judge's finding that substantial evidence supports the ALJ's analysis of Plaintiff's breathing problems. Medical reports in the record show that more often than not, Plaintiff did not present with severe or debilitating breathing issues.[2]  Further, where the medical records show that Plaintiff did suffer from respiratory problems, those problems were quickly resolved through treatment with a breathing inhaler.[3]  Thus, because substantial evidence supports the ALJ's finding as to Plaintiff's breathing problems, the Court is persuaded that the ALJ adequately explained that finding.

Plaintiff also argues that the Magistrate Judge erred by finding that the ALJ properly explained the RFC assessment as it pertained to Plaintiff's back issues.  (Doc. No. 15 at 4.)  On that subject, the ALJ wrote the following:

> The claimant also has a history of sciatica.  Radiographic imaging showed only "mild" degenerative disc disease with "mild" disc bulge at L5-81 and "mild" osteoarthritis at L4-L5.  Treatment included epidural steroid injections, physical therapy, and medication, which offered some relief of pain symptoms.  In fact, physical examinations generally indicated benign findings including 5/5 strength in the extremities, normal musculoskeletal tone, normal range of motion in the low back, and intact gait.  On a few occasions, tenderness and restricted range of motion in the low back were observed, but these abnormal clinical presentations are offset by generally benign presentations noted elsewhere in the record.

> The claimant also participated in a consultative examination in 2014.  Notably, the physical examination generally demonstrated benign findings including no edema in the extremities, normal pulses and reflexes, intact neurological testing, and normal gait.  Some restricted range of motion in the lower back and neck were observed.  Although the examiner did not provide an opinion of the claimant's specific work-related limitations, the [ALJ] affords weight overall to the examiner's

---

[2]  (See R. at 262, 265, 274, 462, 527, 571, 575-76, 593, 602-03, 606, 619-20, 645, 663, 667, 817, 888, 896, 899, 904, 908, 911, 914, 917, 1763, 1766).

[3]  (See R. at 483, 488, 497, 526-27, 607-08, 657.)

documented observations during his session with the claimant.  The examiner's
findings suggest that the claimant could perform light work.

(R. at 27.)

In the R&R, the Magistrate Judge concluded that the ALJ properly explained her
assessment regarding Plaintiff's back pain because the assessment is supported by substantial
evidence.  (Doc. No. 14 at 16-19).  Plaintiff objects to this conclusion and argues that, contrary to
the ALJ's assessment, his back pain was severe and limiting.  (Doc. No. 15 at 4.)  Specifically, he
challenges the Magistrate Judge's endorsement of the ALJ's assessment that his "mild radiological
abnormalities" signaled only mild symptoms.  (Id.)  But in making that argument, Plaintiff ignores
the host of evidence in the record that supports a finding that he only suffers from mild back pain.
For example, the record shows that Plaintiff retains full strength in his legs, normal muscle tone,
an intact gait, and normal range of motion in his lower back.  (Doc. No. 14 at 17.)  Further, "severe"
symptoms only presented when Plaintiff neglected to take his pain medication.  (Id.)
Consequently, substantial evidence supports the ALJ's RFC assessment as it pertained to Plaintiff's
back pain and the Court agrees with the Magistrate Judge that the ALJ properly explained the RFC
assessment.

For these reasons, the Court is unpersuaded by Plaintiff's arguments and will overrule his
second Objection.

### C.  The Magistrate Judge did not Err by Finding that the ALJ Properly Rejected Medical Opinion Testimony

Next, Plaintiff argues that the Magistrate Judge erred by finding that the ALJ properly
rejected the opinion testimony of two medical professionals.  (Doc. No. 15 at 5.)  Plaintiff contends
that the R&R should not have endorsed the ALJ's decision to "reject[] medical opinion on the basis

of her own lay medical judgment." (Id.)  For the reasons stated infra, the Court is not convinced

by Plaintiff's argument.

As the factfinder, the ALJ is specifically charged with the duty to evaluate all medical

evidence in a disability insurance benefits case.  See 20 C.F.R. §§ 416.945, 416.946(c).  The ALJ—

not a physician or consultant—makes the ultimate determination as to whether a claimant is

disabled.  Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011).  According to the

Third Circuit Court of Appeals, an ALJ may reject a physician's opinion where that opinion is not

supported by medically acceptable clinical and laboratory diagnostic techniques or where the

opinion is inconsistent with other substantial evidence in the record.  Fargnoli v. Halter, 247 F.3d

34, 43 (3d Cir. 2001).  Further, Social Security Administration regulations dictate that when an

ALJ considers the amount of weight to afford to a treating physician's opinion, the ALJ must

consider the consistency of the opinion with the evidence in the record.  20 C.F.R. § 416.927(d)(2).

Where there is "conflicting and internally contradictory evidence," the opinion is not necessarily

entitled to controlling weight.  Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).

Here, Plaintiff claims that the ALJ improperly rejected medical opinion evidence on the

basis of her own lay medical judgment.  (Doc. No. 15 at 5.)  Plaintiff refers to two instances where

the ALJ decided to afford only partial or minimal weight to a medical opinion.  (See id.)  First, the

ALJ only gave partial weight to the opinion of Michelle Joy, M.D., Plaintiff's treating psychiatrist.

Discussing Dr. Joy's opinion, the ALJ stated the following:

> Michelle Joy, M.D., treating psychiatrist, opined that the claimant demonstrates
> some difficulty with interpersonal relationships, effective communication, and
> distress tolerance, but can be redirected and deescalated with support.  Dr. Joy
> further opined that the claimant has mild to moderate cognitive impairment that
> sometimes interferes with detailed instructions and often interferes with complex
> instructions.  She also noted that if pain is not managed, it could create
> "psychological hardship or even decompensation" for the claimant.  Partial weight
> is afforded to Dr. Joy's opinion of moderate mental limitations and minimal weight

is afforded to the remainder of her opinion suggesting that the claimant has marked limitations. As discussed above, the medical record supports up to moderate mental limitations. In addition, the claimant conceded his social functioning improved. Furthermore, the medical evidence, as discussed above, generally indicated benign findings.

(R. at 28) (internal citations omitted). In the R&R, the Magistrate Judge found that substantial evidence supports the ALJ's decision to afford partial weight to Dr. Joy's opinion. (Doc. No. 14 at 33.)

Plaintiff contends that the ALJ's decision constitutes improper lay medical judgment. (Doc. No. 15 at 5.) It does not. As noted above, an ALJ may reject a medical opinion where it contradicts objective reports and findings in the record. <u>Fargnoli</u>, 247 F.3d at 43. Here, Dr. Joy's determination that Plaintiff has "marked" cognitive limitations contrasts with objective evidence that he only has "moderate" limitations.[4] For example, contrary to Dr. Joy's opinion, evidence shows that Plaintiff has little difficulty getting along with others and can attend church and medical appointments regularly. (R. at 25.) Additionally, the record shows that Plaintiff can independently take care of himself and his disabled mother, watch television, spend time with friends, shop, and use public transportation. (R. at 25.) These findings contradict Dr. Joy's medical opinion. Thus, the ALJ was justified in affording her opinion partial or minimal weight.

Second, the ALJ afforded partial weight to the medical opinion of Carol J. Henderson, Plaintiff's treating physician. She explained her decision in the following way:

Carol J. Henderson, D.O., treating physician, opined that the claimant is incapable of even low stress jobs and would miss work about three days per month. She further opined that the claimant's symptoms frequently interfere with attention and

---

[4] An ALJ finds that a claimant has a "marked" limitation where the claimant's impairment seriously interferes with his ability to independently initiate, sustain, or complete activities. Further, an ALJ may find a marked limitation where the claimant is frequently ill because of an impairment or has frequent exacerbations of an impairment that result in significant, documented symptoms or signs. A marked limitation means a limitation that is more than "moderate," but less than "extreme." <u>See</u> 20 C.F.R. §§ 404.1520a and 416.920a.

concentration. Dr. Henderson also reported that the claimant could sit for about four hours, stand and/or walk about two hours, and lift up to ten pounds. She also noted that the claimant would need to shift positions at will and elevate his legs throughout the day. In addition, Dr. Henderson reported that the claimant has postural limitations. Here, the medical record only partially supports Dr. Henderson's opinion. Dr. Henderson suggests that the claimant is unable to work and is limited to less than the full range of sedentary work; however, the medical record as a whole, which shows generally benign clinical presentations, does not support this opinion. The medical record however, supports Dr. Henderson's opinion that the claimant's poor circulation, and pain and weakness in the low back and lower extremities impose functional limitations. Thus, partial weight is afforded to this opinion.

(R. at 28-29.) The Magistrate Judge found that substantial evidence supports the ALJ's decision. (Doc. No. 14 at 31.)

Again, Plaintiff contends that the ALJ's decision to afford only partial weight to Dr. Henderson's opinion amounts to improper lay medical judgment. The Court disagrees. As noted in the ALJ's decision, Dr. Henderson's medical opinion contradicts objective findings in the record. (R. at 28-29.) Despite Plaintiff's subjective allegations and Dr. Henderson's assessment, an MRI of Plaintiff's spine demonstrated that his injuries were merely benign. Further, Dr. Henderson's own reports state that Plaintiff's medical records show "generally benign clinical presentations." (R. at 28-29.) Based on these contradictions, the ALJ reasonably concluded that Dr. Henderson's opinion was only entitled to partial weight. Accordingly, the Court agrees with the Magistrate Judge's finding that substantial evidence supports the ALJ's decision.

For the reasons given here, the Court is unpersuaded by Plaintiff's argument that the ALJ improperly rejected medical opinion in favor of her own lay medical judgment. As a result, the Court will overrule Plaintiff's third Objection.

**D. The Magistrate Judge did not Err by Determining that Substantial Evidence Supports the ALJ's Decision to Reject Plaintiff's Testimony**

Finally, in his fourth Objection, Plaintiff argues that the Magistrate Judge erred by finding that substantial evidence supports the ALJ's determination that Plaintiff's testimony was not credible. (Doc. No. 15 at 7-8.) He contends that the Magistrate Judge's finding lacks merits because the evidence in the record does not contradict or discredit his testimony. (Id. at 8.) Additionally, he objects to the Magistrate Judge's endorsement of the ALJ's finding that his failure to listen to medical advice discredited his testimony. (Id.) The Court disagrees.

First, Plaintiff disputes the ALJ's finding that his testimony contradicts evidence in the record. (Id. at 7.) In her decision, the ALJ determined that Plaintiff's testimony regarding the extent and severity of his symptoms was not credible. In relevant part, she explained as follows:

> Turning to the claimant's credibility, there are several reasons why the claimant's allegations of debilitating symptoms are not entirely credible. First, despite allegations of disabling symptoms, physical and mental status examinations generally indicated benign findings. Second, there is evidence of noncompliance with recommended treatment, which suggests that symptoms are not as severe as alleged. In fact, the claimant smoked cigarettes and used cocaine and alcohol against medical advice. Third, the claimant described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For these reasons, the claimant's allegations concerning the severity of his symptoms are not entirely credible and any limitations imposed by the claimant's impairments are accounted for sufficiently in the residual functioning capacity.

(R. at 30.) In the R&R, the Magistrate Judge found that sufficient evidence supports the ALJ's decision. (Doc. No. 14 at 34.)

Having independently reviewed the record, the Court agrees that substantial evidence supports the ALJ's finding that Plaintiff's testimony was not credible. Although Plaintiff claimed that his lower back and knee caused him near-constant pain, diagnostic tests and medical reports in the record show that his ailments were mild and "generally benign." (R. at 28-29.) Plaintiff

testified that he has difficulty walking and can only sit or stand for thirty minutes at a time, but objective medical findings show that he has full strength in his legs and normal range of motion in his lower back. (R. at 27.) Furthermore, he is able to complete activities of daily living such as shopping, running errands, caring for his mother, and attending church and appointments. (R. at 25.) This substantial evidence contradicts Plaintiff's testimony and supports the ALJ's decision to afford it minimal weight.

Second, Plaintiff contends that his "non-compliance" with medical advice does not discredit his testimony. (Doc. No. 15 at 7-8.) In the ALJ's decision, she found Plaintiff's testimony not credible in part because his "noncompliance with recommended treatment . . . suggests that symptoms are not as severe as alleged." (R. at 30.) In the R&R, the Magistrate Judge endorsed this finding. She first explained that substantial evidence supports the ALJ's determination that Plaintiff did not follow medical advice:

> Here, the evidence was abundant that Rollerson was frequently noncompliant with his physicians' medical treatment. While the ALJ reasonably focused on Rollerson's continued smoking of tobacco and cocaine and consumption of alcohol despite his doctors' repeated advice that such conduct would exacerbate his symptoms, see, e.g., R. at 295 (doctor recommended that he cease smoking tobacco and cocaine); 511 (went to emergency room for breathing problems after smoking cocaine); 526 (same); 513 (strongly advised to cease smoking crack because it might be the cause of his chest pain); 611 (smoking outside hospital during emergency room visit); 915 (counseled that smoking increases chronic pain), the record also reveals a number of additional forms of noncompliance. Rollerson went to the emergency room multiple times for treatment of symptoms that surfaced after he ran out of or stopped taking medication prescribed to treat those symptoms. See, e.g., id. at 481 (treated for breathing problems after he ran out of Albuterol), 486 (treated for shortness of breath after he stopped taking his asthma medications), 495 (same), 595 (treated for high blood pressure after he stopped taking blood pressure medication), 650 (treated for back pain after he ran out of psychiatric medications). Rollerson also was generally noncompliant with his CPAP use.[5] See, e.g., id. at

---

[5] Continuous Positive Airway Pressure, or CPAP, is a treatment that uses mild pressure to keep a patient's breathing airway open. A CPAP machine, includes a mask or other device that fits over a patient's nose and mouth, blows air into a patient's mouth and is used to treat sleep-

419 (CPAP smartcard reading revealed he had used the machine more than four hours in a night less than five percent of the time); <u>see also</u> <u>id.</u> at 264 (recommended lifestyle and diet modifications).

(Doc. No. 14 at 36-37.)  After reviewing the record <u>de novo</u> and evaluating the relevant portions of the R&R, the Court agrees that substantial evidence supports the ALJ's finding that Plaintiff did not adhere to the advice of his doctors.

Plaintiff contends, however, that noncompliance with treatment does not justify a finding that an individual is not credible.  (Doc. No. 15 at 7.)  But the law does not support this contention.  In fact, it is well established that "the failure to follow through with prescribed courses of treatment is a factor that the ALJ may consider in assessing the severity of an impairment."  <u>Honkus v. Colvin</u>, No. 13-1830, 2015 WL 225391, at *16 (W.D. Pa. Jan. 16, 2015).  "[A]n ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason."  <u>Vega v. Comm'r of Soc. Sec.</u>, 358 Fed. App'x. 372, 375 (3d Cir. 2009).

Here, it was not Plaintiff's noncompliance with treatment that formed the basis for denial of benefits; instead, it was his residual functioning capacity to perform light work.  As noted above, assessing a claimant's residual functioning capacity requires evaluating the severity and persistence of the claimant's symptoms.  (R. at 26.)  If a claimant ignores treatment prescribed to relieve his symptoms, it follows that his symptoms may not be severe or persistent.  In this case, Plaintiff consistently disregarded medical advice prescribed to assuage his symptoms, leading the ALJ to determine that his account of the severity and persistence of those symptoms was not entirely credible.  Because an ALJ is permitted to consider noncompliance when considering a Plaintiff's credibility, the ALJ's finding here was proper.

---

related and lung disorders.  <u>CPAP</u>, NATIONAL HEART, LUNG, AND BLOOD INSTITUTE, https://www.nhlbi.nih.gov/health-topics/cpap (last visited Jan. 4, 2019).

For the reasons given here, the Court is convinced that the Magistrate Judge did not err by finding that both the law and substantial evidence supports the ALJ's decision to reject Plaintiff's testimony. Consequently, the Court will overrule Plaintiff's fourth and final Objection.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Objection to the R&R (Doc. No. 15) are overruled. The Report and Recommendation (Doc. No. 14) will be approved and adopted in its entirety. An appropriate Order follows.